# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BARBARA SMITH, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | 3:07-cv-01301 (WWE) |
| | : | |
| CITY OF ANSONIA, | : | |
|     Defendant. | : | |

## MEMORANDUM OF DECISION ON
## DEFENDANT'S MOTION TO DISMISS

This action arises from plaintiff Barbara Smith's claims that defendant City of Ansonia discriminated and retaliated against her on the basis of her gender and subjected her to a hostile work environment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60(a). Now pending before the Court is defendant's Motion to Dismiss (Doc. #6).

The Court has jurisdiction over plaintiff's claims pursuant to 28 U.S.C. § 1331 as to plaintiff's federal law claims and pursuant to 28 U.S.C. § 1367 as to plaintiff's state law claims.

## BACKGROUND

For purposes of ruling on a motion to dismiss, the Court accepts all allegations of the complaint as true.

Plaintiff was hired by the City of Ansonia on August 12, 1998 as a clerk in the Finance Department. The following year, Joseph Miller was hired as the Comptroller and head of the Finance Department. Upon his hiring, Miller subjected plaintiff to

1

inappropriate and sexually harassing comments. By 2001, plaintiff informed Mayor James Della Volpe of defendant City of these comments. Following an open meeting to address the harassment, Miller retaliated against plaintiff by writing her up for taking sick time even though plaintiff's actions did not violate any protocol or policy. Plaintiff filed a formal grievance against Miller concerning the write-up.

In her grievance, plaintiff asserted that Miller's comments included addressing plaintiff as "B.S." rather than by her name; saying to plaintiff's co-worker upon seeing plaintiff eat a piece of candy, "look how she can lick that ball;" asking plaintiff as she left the restroom if "everything come out okay or do you need my help;" suggesting that if plaintiff worked at the First Union bank near the office, that she could answer the phone "F.U.;" asking plaintiff personal questions about doctors visits; stating that a cactus in the office looked like a "man's part;" and inviting plaintiff into the men's room to look for his misplaced coffee cup.

In addition, Miller printed out inappropriate pictures from the internet and left them out for public display; rubbed up against plaintiff as he passed; took long calendar tubes, placed them in front of his genital area and stated "hey baby;" and asked plaintiff to wear dresses because he would "like to see more." Although defendant was aware of these comments, it did nothing to stop them. Plaintiff and her husband both reported Miller's actions to Mayor Della Volpe at least three times. In 2002, plaintiff, fearful of Miller's reaction, made an anonymous sexual harassment complaint to defendant's Human Resources Department.

In July 2005, plaintiff was admitted to the emergency room due to a seizure and severe panic attacks. Mayor Della Volpe visited plaintiff and stated to plaintiff, "it was

2

Miller, wasn't it?" Plaintiff responded, "yes it was Miller," to which Della Volpe told plaintiff to "take some time off."

Following plaintiff's return to work, Miller continued harassing plaintiff with more comments. Defendant failed to take any corrective action. On November 22, 2006, Mayor Della Volpe issued a written memorandum stating that there was to be no contact between Miller and plaintiff effective immediately. Plaintiff contends that Miller violated this directive while Defendant failed to enforce it.

Plaintiff filed a claim with the Equal Employment Opportunity Commission ("EEOC") and the Connecticut Commission on Human Rights and Opportunities ("CHRO"). Plaintiff received a Release of Jurisdiction from the CHRO on July 2, 2007 and from the EEOC on August 2, 2007.

Plaintiff brought suit in this Court claiming (1) a violation of Title VII on account of Miller's sexual harassment; (2) a violation of Title VII for subjecting plaintiff to a hostile work environment; (3) a violation of Conn. Gen. Stat. § 46a-60(a)(4) for retaliation against plaintiff; (4) a violation of Title VII based on retaliation; (5) a violation of Conn. Gen. Stat. § 46a-60(a)(5)[1] for aiding and abetting the discriminatory actions taken against plaintiff; (6) a violation of Conn. Gen. Stat. § 46a-60(a)(8) for subjecting plaintiff to sexually explicit behaviors in the work environment; (7) intentional emotional distress; and (8) negligent supervision.

Defendant's motion to dismiss is specifically directed to counts II, IV, V, VII and VIII.

---

[1] Plaintiff's complaint refers to Conn. Gen. Stat. § 46a-60(5) which the Court construes as a claim under Conn. Gen. Stat. § 46a-60(a)(5).

**DISCUSSION**

The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Ryder Energy Distribution v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984). When deciding a motion to dismiss, the court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. Hishon v. King, 467 U.S. 69, 73 (1984). The complaint must contain the grounds upon which the claim rests through factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007). A plaintiff is obliged to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible. Iqbal v. Hasty, 490 F.3d 143 (2d Cir. 2007) (applying flexible "plausibility standard" to Rule 8 pleading).

**I.    Count II - Violation of the Title VII of the Civil Rights Act of 1964 for Subjecting Plaintiff to a Hostile Work Environment**

Defendant seeks dismissal of count II as duplicative of count I of plaintiff's complaint. Count I of the complaint alleges that plaintiff's rights under Title VII were violated through Miller's sexual harassment, whereas count II asserts that plaintiff's Title VII rights were violated through the presence of a hostile work environment.

Title VII provides that "[i]t shall be an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin...." 42 U.S.C. § 2000e-2(a)(1). Claims that plaintiff's

4

Title VII rights were violated due to sexual harassment and based on a hostile work environment are "functionally identical." Jackson v. Health Res. of Rockville, Inc., 357 F. Supp. 2d 507, 518 (D. Conn. 2005). The Court will therefore dismiss count II as duplicative of count I.

## II.     Count IV - Violation of Title VII Sexual Harassment Based on Retaliation[2]

Defendant seeks dismissal of count IV on the grounds that there is no such claim as "sexual harassment based on retaliation" and that, even if there was one, it would be duplicative of other claims asserted. The Court reads plaintiff's complaint as asserting a violation of Title VII based on retaliation. As this is her only claim under Title VII for retaliation, this claim will survive defendant's challenge.

## III.    Count V - Violation of Conn. Gen. Stat. § 46a-60(a)(5) for Aiding and Abetting the Discriminatory Actions Taken Against the Plaintiff

Defendant seeks dismissal of count V on the grounds that plaintiff failed to exhaust her administrative remedies by not including aiding and abetting in her claim to the CHRO. Conn. Gen. Stat. § 46a-60(a)(5) falls within the requirements of Conn. Gen. Stat. § 46a-82. Therefore, a plaintiff asserting a claim for aiding and abetting a discriminatory employment practice must first file a claim with the CHRO before she is permitted to file suit in court. Because plaintiff failed to include her aiding and abetting claim in her CHRO claim, plaintiff cannot include it now. See Wright-Kahn v. People's Bank, 2001 U.S. Dist. LEXIS 14396 (D. Conn. July 25, 2001).

---

[2] Section IV.C. of defendant's motion seeks dismissal of "count five" which is entitled "sexual harassment based on retaliation." The Court assumes that defendant referred to count IV of the complaint, not count V which is for a violation of Conn. Gen. Stat. § 46a-60(a)(5).

Even if plaintiff's aiding and abetting claim were "reasonably related" to plaintiff's other claims and it was therefore not necessary for plaintiff to include this claim in her CHRO claim, dismissal would still be appropriate. A claim for aiding and abetting discrimination cannot exist solely against an employer. Canty v. Rudy's Limousine, 2005 U.S. Dist. LEXIS 20495, *7 (D. Conn. Sept. 15, 2005) ("The law in Connecticut is clear that while an individual employee may be held liable for aiding and abetting his employer's discrimination, an employer can not be liable for aiding and abetting its own discriminatory conduct."). As plaintiff makes a claim for aiding and abetting only against defendant-City as employer, dismissal is appropriate on this ground as well.

## IV.     Count VII - Intentional Emotional Distress

Defendant seeks dismissal of count VII on the grounds that plaintiff failed to allege any conduct which was extreme and outrageous. A claim for intentional infliction of emotional distress requires that plaintiff establish (1) that defendant intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that defendant's conduct was the cause of plaintiff's distress; and (4) that the emotional distress sustained by plaintiff was severe. Appleton v. Board of Educ., 254 Conn. 205, 209 (2000).

The determination of whether defendant's conduct is extreme and outrageous is initially a question for the court. Id. at 210. Extreme and outrageous conduct is conduct that "goes beyond all possible bounds of decency, is regarded as atrocious, is utterly intolerable in a civilized society, and is of a nature that is especially calculated to cause, and does cause, mental distress of a very serious kind." Miner v. Town of

Cheshire, 126 F. Supp. 2d 184, 194 (D. Conn. 2000).  Such conduct would lead a reasonable person to "arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'"  Baillargeon v. First Union Nat'l Bank, 2001 Conn. Super. LEXIS 1186, *9 (Conn. Super. Ct. May 3, 2001).  Further, the court looks to the employer's conduct, not the motive behind the conduct, to determine whether it is extreme and outrageous.  See Huff v. West Haven Board of Educ., 10 F. Supp. 2d 117, 123 (D. Conn. 2000).  Finally, "insults, verbal taunts, threats, indignities, annoyances, petty oppressions or conduct that displays bad manners or results in hurt feelings do not support a claim for intentional infliction of emotional distress."  Miner, 126 F. Supp. 2d at 195.

Because plaintiff has alleged a prima facie claim of intentional infliction of emotional distress, including conduct that may be considered extreme and outrageous, dismissal at this stage of the case would be premature and inappropriate.  See Pruitt v. Mailroom Tech., Inc., 2007 U.S. Dist. LEXIS 57808, *20 (D. Conn. Aug. 9, 2007).  The Court will, accordingly, deny defendant's motion to dismiss this count of plaintiff's complaint.

## V.     Count VIII - Negligent Supervision

Defendant moves for dismissal on count VIII, arguing that a claim for negligent supervision cannot rest on claims under Title VII.  Claim VIII of plaintiff's complaint alleges that defendant should be liable based on Mayor Della Volpe's knowledge and failure to act upon plaintiff's complaints regarding Miller's behavior.

To the extent that plaintiff's claims rests on the emotional distress claim, Connecticut law provides that a claim for negligent supervision cannot survive in the

context of a continuing employment relationship. As this Court has stated, "Connecticut bars all negligence-based emotional distress claims occurring within a continuing employment context." Antonopoulos v. Zitnay, 360 F. Supp. 2d 420, 431 (D. Conn. 2005). The Antonopoulos Court therefore dismissed plaintiff's negligent supervision claim at the summary judgment stage. See also Grunberg v. Quest Diagnostics, Inc., 2008 U.S. Dist. LEXIS 8205 (D. Conn. Feb. 5, 2008) (dismissing negligent supervision claim because plaintiff continued her employment with defendant).

As to plaintiff's negligent supervision claim insofar as it rests upon the alleged violations of Title VII, defendant contends that this Court's jurisprudence precludes such a claim. In Deguzman v. Kramer, this Court ruled that the injury necessary to establish a negligent supervision claim cannot be the violation of the plaintiff's rights under Title VII. Deguzman v. Kramer, 2005 U.S. Dist. LEXIS 19293, *6 (D. Conn. Aug. 22, 2005). In reaching that conclusion, this Court stated that allowing the injury prong to be fulfilled by a Title VII violation would "create a cause of action under state law with no indication from either the Connecticut legislature or courts that such a cause of action is appropriate." Id. As the Court's reasoning applies to the instant situation, plaintiff's claim for negligent supervision will be dismissed.

## CONCLUSION

For the foregoing reasons, the Court GRANTS defendant's motion to dismiss as to counts II, V and VIII and DENIES defendant's motion as to counts IV and VII (Doc. #6). Plaintiff is instructed to amend her complaint consistent with this ruling within ten days.

Dated at Bridgeport, Connecticut, this 7th day of May, 2008.

/s/
Warren W. Eginton
Senior United States District Judge